Harper, Chancellor.
It appears to me that the decree delivered by myself in the case of the present defendants against the present plaintiff, is sufficiently explicit in stating that the claim of Mr. Jones, in his character of creditor, was not considered. And it is manifest that it could not be then considered. The bill was against Jones as administrator, for the purpose of establishing the gift or transfer of the slaves by his intestate to the then plaintiffs. This was the case he was called upon to meet. But being a creditor of the estate, he had a right, if the estate were insolvent, to say that though such transfer were made, it must be regarded as fraudulent against creditors. This defence might perhaps have been made by the answer, or might have been the subject of a cross bill. But the defence was not made by the answer nor the evidence, although intimations were thrown out that the interests, of creditors might be affected by the determination. This, however, was not enough. To invalidate a conveyance, the party must allege and prove it to be fraudulent. To do *485 this, it was necessary to show, not only that debts existed at the time of the transfer, .but that, apart from the property transferred, the estate was insolvent. This showing must have been preliminary to any relief to be afforded by the Court. The Court could not volunteer to direct an inquiry into the concerns of an estate, for the purpose of establishing a charge of fraud, upon a surmise that it might turn out insolvent. Plainly it was impracticable for the present plaintiff, Jones, to make out that case at that time. The lands of the estate were unsold and their value unknown, and there were important and litigated concerns of the estate to be settled. Could the Court have retained the bill for an indefinite length of time, in order to afford a party the chance of making out a charge, which, if he had alleged it, he ought to have been prepared to prove at the hearing ? I have little doubt but that the determination, that the transfer was founded on valuable consideration, was regarded at the time as a determination in effect on the rights of Jones as creditor. Before the case of Smith v. Henry, (1 Hill, 16,) an opinion seemed to have ♦obtained, that to show a conveyance to be valid as against creditors, it was enough to prove that it was founded upon valuable *- ° consideration. And it may be that the decision in that case has suggested the present proceeding.
The case being properly before us then, we are first to inquire whether it comes within the principle of the case of Smith v. Henry. It appears to me that it does not. The principle of that decision, as it is expressed in very terms, is, that the law allows a debtor to give a preference to one creditor over another, “ but it will not allow him to secure an advantage to himself, at the expense of .creditors, as the price of such preference. ” “ An advantage to himself,” in law, of which the function is to adjust the rights of property, must mean an advantage in relation to property, profit or pecuniary advantage. It could not mean, for instance, the gratification of taste or vanity. It was suggested that an advantage might be obtained by quieting other creditors, in consequence of the appearance of property in the donor. This is a sort of speculative and uncertain advantage which it is difficult to estimate, and perhaps it would be impracticable in a majority of cases for Courts to determine whether a donor had secured such an advantage or not. Still I think the consideration is entitled to its weight in considering the question of actual fraud or fairness upon all the circumstances of the case. But whatever weight it might be thus entitled to, it does not come within the principle of Smith and Henry, which speaks in the most explicit manner of the certain, direct benefit or pecuniary advantage to be derived from the use of the property. I believe there is scarcely a sentence of the opinion, in relation to the matter, which does not illustrate this. “ If a party, indebted to several, goes to one of his creditors and says, ‘ my whole property is not more than sufficient to pay you ; I will give you the preference, however, and assign to you, provided you will allow me to have the use of it for a stipulated length of time, or until I work out the debt,’ — this is fraud in both.” The use spoken of is of course for the donor’s own benefit. “The debtor gains what he is not entitled to at the expense of creditors, and enjoys the property independently of them.” The creditor “gives a bribe for the preference.” A bribe means, in law, a pecuniary benefit. The expression — “use and enjoy the property as his own” — is *486 frequently repeated. So in the quotations from Twine’s case and Sheppard’s Touchstone. In short, I cannot think that there is any ambiguity in the decision,
*In this case, the proof is distinct and certain that the donor ' bá ‘ J was to pay hire for the slaves. Can I say that his retaining possession under this stipulation was the securing of a benefit to himself ? I do not see how. In general, a party who hires slaves may be supposed to do so for his own convenience. But if the price be full and fair, the law must regard the transaction as an exchange of equivalents. I do not suppose that it would be generally advantageous to cultivate a man’s plantation by hired slaves. In this ease, the hire was to be fair, for it was to be valued by indifferent persons. And it appears from the testimony of Mrs. Howell in the former cause, that Major Goodwyn consented to hire the slaves, not for his own convenience, but for that 'of the donee, Mr. Blake, who had no land.
I am- well aware that this construction may occasion attempts to evade the rule as laid down in the case of Smith v. Henry. But it must be the business of the Court to guard against evasions. If the stipulation for hire were kept secret between the parties themselves — if the hire were very inadequate — if it remained for a long time not paid or demanded — , all these would be circumstances to show the stipulation to be colorable or evasive. I should say that when the grantor retains possession after the sale, the presumption of law is that he does so for his own benefit, and that the burden is on him to show by the most satisfactory proof that he obtained no advantage from it. This has been done in the present case by the testimony of Mrs. Howell and of Col. Chappell — and indeed in some degree by that of the present plaintiff, who admits that he knew that a transfer of the slaves was intended, and ■ that he and his father were to value the hire — on which the claim for hire was established and decreed against the estate of Major Goodwyn, when the present question was not under consideration.
Though not within the rule of Smith v. Henry, and though there was a valuable consideration, still the transaction might be fraudulent if there were proof of an actual fraudulent intention. But the proof is otherwise. The consideration was not greatly inadequate, — though it is said the Court will not look nicely into considerations. The donor then possessed a very considerable estate, and there is nothing to show that he had the slightest reason for believing himself to be approaching insolvency. The plaintiff did not certainly know the estate to be insolvent at the hearing of the former cause. He did what he.had long intended, and *6381 *what the plaintiff admits that he knew him to have intended, and J what he was under the strongest obligations of honor and conscience to do. Indeed I do not understand the charge of an actual fraudulent intention to be urged on the part of the plaintiffs. The decree dismissing the bill must therefore be affirmed.
Chancellors Dr Saussurr and Johnson, concurred.
Chancellor Johnston. I concur in the result.